In late 1997 or early 1998, plaintiff F. Isaac Hakim (Isaac) located a business opportunity involving a triple net lease of a commercial office building at 41 West 57th Street. Isaac approached his uncle, defendant Kamran Hakim (Kamran), about entering into a joint venture to lease the property. Isaac thereaf *499 ter began negotiations for the lease with the property owner. Kamran advised his nephew that he wanted to form an entity called 41 West 57th Street LLC for the express purpose of pursuing this opportunity. The limited liability corporation was formed on March 6, 1998.
On March 9, 1998, 41 West 57th Street LLC entered into a 49 year triple net lease* with the building owner. The lease named Isaac as a guarantor under a “Good Guy Guarantee.” The same day, uncle and nephew executed an Option Agreement (the Option), whereby Isaac could obtain up to a one-third membership interest in the LLC. The Option gave Isaac two years, until March 10, 2000, to exercise his option to obtain the membership interest. With respect to the purchase price, the Option provided: “The purchase price for the Membership Interest shall be an amount equal to (a) the Membership Interest multiplied by (b) 110% of all monies therefore expended by the LLC and/or [Kamran] in connection with the Lease and/or Premises.”
The Option also provided that within three days of the exercise thereof, “a closing shall occur,” at which time the purchase price would be delivered by certified check, and that an operating agreement “shall be executed which shall provide, inter alia, that [Kamran] shall be the sole managing member,” with rights to make all decisions for the LLC. Finally, the Option provided that if it was not exercised, Kamran would indemnify Isaac for any losses pursuant to the Guaranty signed by Isaac when the lease was executed.
On March 9, 2000, Isaac timely exercised his option under the parties’ agreement. He alleges that Kamran and his attorneys, Harold Kinder and Joseph Tuchman, accepted exercise of the option. With respect to the three-day closing period, Kamran advised Isaac that Kinder would put together an accounting so that Isaac’s portion of the LLC could be determined, and that Tuchman would draft an operating agreement. No accounting was put together by Kamran or his attorneys.
Isaac asserts that Kamran told him that in order to facilitate negotiation of a mortgage for the property, execution of Isaac’s operating agreement for the LLC would be postponed until after the mortgage was obtained. Accordingly, Isaac applied for the mortgage in April 2001, and on August 9, 2001, 41 West 57th LLC borrowed $3 million against the leasehold. Isaac *500 contends that the mortgage was intended to reimburse Kamran for his original financial investment. Kamran continued to delay-preparation of the operating agreement despite the alleged satisfaction of Kamran’s expenditures, and despite Isaac’s repeated requests therefor.
Meanwhile, Isaac worked with a contractor to renovate the property. He located tenants, negotiated subleases, and managed the day-to-day operation of the property. Kamran was aware that Isaac negotiated and executed leases, holding himself out as a member of the LLC. Isaac was in constant contact with Tuchman and Adam Brodsky, Kamran’s in-house attorneys, and his accountant, Harold Kinder, advising them of his progress, providing documentation of his efforts, and requesting the accounting.
In opposition to Kamran and the LLC’s motion to dismiss, Isaac produced emails regarding the requested accounting. On June 6, 2005, in an email, Tuchman requested that Isaac give him additional time to provide the accounting, stating that “[w]e are scheduled to meet Tues June 28 and Wed June 29 to go over the monies and accounts that are owed to Kamran by you. I will in good faith try to have preliminary numbers for you on those date[ ] [sic]. We will try to finalize all numbers on that Wed.” That meeting was cancelled.
In response to a November 5, 2008 email by which Isaac requested an accounting, Tuchman replied on November 6, 2008, as follows: “I spoke to Kamran and he wanted me to furnish to you more complete numbers (including all calculations). I can try to finish it within the next couple of days and have something to [you] by next week. Hopefully this will put the economics in a clearer light.”
Although Kamran promised, as indicated by these emails, to provide an accounting, he continually offered excuses for not doing so. By letter dated September 17, 2008, Isaac formally requested that Kamran recognize Isaac’s membership interest in the LLC. By letter dated September 22, 2008, Kamran, represented by new counsel, denied that Isaac had exercised his option, and stated that Isaac was not, and would never be, a member of the LLC.
On September 17, 2010, Isaac brought this action, asserting contractual and equitable claims against his uncle and the LLC. In lieu of an answer, defendants moved, pursuant to CPLR 3211, to dismiss the action as time-barred.
We affirm the order appealed from to the extent that it denied defendants’ motion to dismiss the causes of action for breach of contract, an accounting, and constructive trust. While we also *501 sustain that portion of the order which denied dismissal of the causes of action for quantum meruit and unjust enrichment against the LLC for services post-dating September 17, 2004, we modify to dismiss those causes of action against Kamran individually.
This is an appeal from the disposition of a pre-answer, prediscovery motion to dismiss the complaint pursuant to CPLR 3211. At this juncture, we must “accept the facts as alleged in the complaint as true, accord plaintiff[ ] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory” (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). Submissions offered in opposition to the motion must also be accepted as true for purposes of determining whether there is any cognizable cause of action (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]).
The six-year limitations period for Isaac’s contract-based claims technically expired several years before Isaac commenced this action (CPLR 213 [2]). However, Isaac’s claims were revived, pursuant to General Obligations Law § 17-101, by Kamran’s in-house counsel’s emails to Isaac dated June 6, 2005 and November 6, 2008, referring to Kamran’s intent to provide Isaac with an accounting of the amount that he owed to his uncle Kamran (the sole member of the corporation). Viewing the emails in the light most favorable to Isaac and drawing all reasonable inferences therefrom, they constitute an acknowledged obligation to furnish the accounting required for Isaac’s purchase of his membership in the LLC. No other reason has been offered for an accounting of any amount owed by Isaac to Kamran; and indeed, Isaac had been providing Kamran and the LLC with free managerial services for years.
The emails unambiguously promise to provide the long overdue figures necessary to complete Isaac’s exercise of his option. Accordingly, Isaac has stated a viable claim for revival pursuant to defendants’ “absolute and unqualified acknowledgment” of the validity of his option-based claims (Lew Morris Demolition Co. v Board of Educ. of City of N.Y., 40 NY2d 516, 521 [1976]; see Hon Fui Hui v East Broadway Mall, Inc., 4 NY3d 790, 791 [2005]; Sullivan v Troser Mgt., Inc., 15 AD3d 1011, 1012 [4th Dept 2005]). The emails were authenticated by in-house counsel, who placed his name under the messages, acting on behalf of Kamran and the LLC, and thus constitute the requisite “writing signed by the party to be charged” (General Obligations Law § 17-101; see Newmark & Co. Real Estate Inc. v 2615 E. 17 St. Realty LLC, 80 AD3d 476 [1st Dept 2011]; Stevens v Publicis *502 S.A., 50 AD3d 253, 255-256 [1st Dept 2008], lv dismissed 10 NY3d 930 [2008]).
We dismiss the causes of action for quantum meruit and unjust enrichment as against Kamran. Because Isaac alleges that he provided uncompensated management services to the LLC, not to Kamran individually, Kamran cannot be held liable on these causes of action. Insofar as the quantum meruit and unjust enrichment claims are asserted against the LLC, the motion court properly determined that these claims are not time-barred to the extent they seek recovery for services Isaac allegedly performed within the six years before he commenced this action. Concur — Gonzalez, EJ., Friedman, Moskowitz, Acosta and Richter, JJ.

 Also termed a “net-net-net lease,” a triple net lease is one in which “the lessee pays all the expenses, including mortgage interest and amortization, leaving the lessor with an amount free of all claims.” (Black’s Law Dictionary [9th ed 2009], lease.)